# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### On Brief November 2, 2010

## STATE OF TENNESSEE v. JONATHAN EVERETT

### Appeal from the Criminal Court for Shelby County
### No. 06-06767    Lee V. Coffee, Judge

### No. W2008-01578-CCA-R3-CD  -  Filed April 4, 2011

Appellant, Jonathan Everett, was indicted by the Shelby County Grand Jury for one count of first degree murder and two counts of attempted first degree murder. After a lengthy jury trial, Appellant was convicted of one count of second degree murder, one count of attempted voluntary manslaughter, and one count of reckless endangerment. As a result, Appellant was sentenced to an effective sentence of twenty-nine years, eleven months, and twenty-nine days. Appellant presents the following issues for our review on direct appeal: (1) whether the trial court properly denied the motion to dismiss and remand for a preliminary hearing; (2) whether the trial court properly denied the motion to suppress Appellant's statement; (3) whether the trial court erred by denying Appellant's request to cross-examine Jamarcus Palmer about specific instances of conduct; (4) whether the evidence was sufficient to support the convictions; and (5) whether the trial court properly sentenced Appellant. After a thorough review of the record, we conclude that the trial court properly denied the motion to dismiss; the trial court properly denied the motion to suppress when Appellant's statement was made knowingly and voluntarily; the trial court properly denied Appellant's request to cross-examine Jamarcus Palmer; the evidence was sufficient to support the convictions; and the trial court properly sentenced Appellant. Therefore, the judgments of the trial court are affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JOHN EVERETT WILLIAMS, J., Joined.

Phyllis Aluko, Assistant Public Defender, for the appellant, Jonathan Everett.

Robert E. Cooper, Jr., Attorney General and Reporter, Benjamin A. Ball, Assistant Attorney General; William L. Gibbons, District Attorney General, and Ray Lapone and David Pritchard, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

On March 10, 2006, Trezevant High School in Memphis, Tennessee, held a Jamboree. The Jamboree was a band competition. Appellant attended the Jamboree with Fadarreyall Crumb and a few other friends. Mr. Crumb had a handgun on his person when he got to the Jamboree. He stashed it in the shrubbery outside the school prior to entering the Jamboree.

Rodney Thomas, otherwise known as "Big Rodney," also attended the Jamboree. He graduated from Trezevant High School in 2005. Mr. Thomas drove his car to the event and was accompanied by Terrance Wilson and Jamarcus Palmer. Mr. Thomas parked his car at the Buena Vista apartments across the street from the school. None of the young men were armed.

When the Jamboree was over, there were a lot of people milling around outside the school. A crowd gathered in the parking lot. There was a "commotion" and people were "throwing gang signs" and shouting out things about their neighborhoods. At least one gun shot rang out.

When they heard the gunshot, Mr. Wilson and Mr. Palmer ran immediately toward Mr. Thomas's car. They got inside the car. Mr. Thomas, on the other hand, waited for a few minutes for the crowd to thin out before he walked backed to his car.

When Mr. Crumb heard the first gunshot, he retrieved his gun from the bushes. He reunited with Appellant and several other friends. At least two other young men in this group were armed. They walked toward the Buena Vista apartments where they saw Mr. Thomas getting into his car. Mr. Crumb saw Mr. Thomas and commented, "This them [people]." Mr. Thomas yelled out, "No brother, this Big Rodney." Mr. Crumb lowered his gun. At that time, Appellant snatched the gun from Mr. Crumb's hand and stated, "No, that's them [people]." Appellant shot the weapon four times in the direction of Mr. Thomas and the car.

Mr. Wilson grabbed his neck and collapsed. He died at the scene from two gunshot wounds, one to the right shoulder and one to the right side of his head. The two wounds could have possibly come from the same bullet. Mr. Thomas was shot in the hand and the

chest. He almost immediately lost consciousness. When he regained consciousness, he saw Appellant and his friends running away from the scene. Mr. Thomas was hospitalized and underwent surgery as a result of his injuries. Mr. Palmer escaped the melee unscathed after diving onto the floorboard of the car.

While Appellant was running away from the scene, Appellant returned the gun to Mr. Crumb. Mr. Crumb discarded the weapon in a wooded area. The weapon was later recovered.

Mr. Thomas spent about a week and a half in the hospital, undergoing several surgeries. He could not initially identify Appellant as the perpetrator but was being prepped for surgery at the time that he was questioned by police. He later identified Appellant as the shooter.

Appellant was a juvenile at the time of the offense. He gave a statement to police on March 11, 2006. Appellant's mother was present during the interview. During the interview, Appellant confessed that he took the gun from Mr. Crumb and shot at Mr. Thomas. Appellant admitted that he ran from the scene. Appellant insisted that Mr. Thomas had threatened him over "some gang related stuff." Appellant did not claim in his statement that Mr. Thomas was armed. Appellant was transferred from juvenile court for trial as an adult.

Appellant was indicted for his role in the incident and charged with one count of first degree murder and two counts of attempted first degree murder by the Shelby County Grand Jury. At trial, Appellant testified. Appellant claimed that he and Mr. Thomas had a long history of conflict. Appellant testified that earlier on the night of the Jamboree, Mr. Thomas "bumped" Appellant and told him that someone was "gonna get killed tonight." Appellant also insisted at trial that Mr. Thomas was armed during the confrontation. Appellant stated that it was his belief that Mr. Thomas would kill him.

Appellant's mother also testified in his behalf. Mrs. Everett testified that Appellant was of below-average intelligence and often got into fights at school. Mrs. Everett even sent Appellant to his grandmother's house to live for two years in order to remove him from the area. Mrs. Everett thought that Appellant could stay out of trouble if he were at a different school.

A family friend, Christy Campbell, testified that she witnessed a confrontation between Appellant and a group of young men who appeared to be "after" Appellant. Ms. Campbell saw Appellant walking with a group of friends and saw another group of young men approaching Appellant and his friends. Ms. Campbell thought that the approaching group appeared to be armed based on their demeanor and walk. This confrontation occurred

-3-

sometime prior to the incident at issue but Ms. Campbell could not remember whether it occurred in 2005 or 2006. Ms. Campbell could not positively identify any of these people that were "after" Appellant but testified that she gave Appellant a ride home that day so that he could avoid the group.

At the conclusion of the proof, the jury convicted Appellant of the lesser included offenses of second degree murder, attempted voluntary manslaughter, and reckless endangerment. The trial court held a separate sentencing hearing during which Appellant was sentenced to twenty-five years for second degree murder, four years for attempted voluntary manslaughter, and eleven months and twenty-nine days for reckless endangerment. The trial court determined that consecutive sentences were warranted based upon Appellant's classification as a dangerous offender. As a result, Appellant's effective sentence for the convictions was twenty-nine years, eleven months, and twenty-nine days.

Appellant filed a motion for new trial. At the hearing, Appellant alleged and presented at least sixteen grounds for relief. The trial court denied the motion and this appeal followed.

On appeal, Appellant argues: (1) the trial court improperly denied the motion to dismiss; (2) the trial court improperly denied the motion to suppress; (3) the trial court erred by denying Appellant's request to cross-examine Jamarcus Palmer about specific instances of conduct; (4) the evidence was insufficient to support the convictions; and (5) the trial court improperly sentenced Appellant.

*Analysis*

*Motion to Dismiss*

First, Appellant argues that the trial court erred by denying his motion to dismiss and remand for a new preliminary hearing. In his argument, Appellant compares the right of a juvenile to a full and fair transfer hearing to the right of an adult to a preliminary hearing. Appellant urges this Court to hold that *State v. Graves*, 126 S.W.3d 873 (Tenn. 2003), provides guidance that the proper remedy would be dismissal of the indictment and remand of the matter to the lower court. The State disagrees, stating that the trial court properly denied the motion to dismiss.

As part of his argument, Appellant acknowledged that he received a transfer hearing on March 29, 2006. He explained that he requested a copy of the hearing prior to trial. Appellant was informed that the audio transcript had been destroyed as the result of a computer malfunction. In response to this discovery, Appellant filed a motion to dismiss.

-4-

Appellant also requested a new preliminary hearing. The trial court held a hearing on the motion. At the hearing, Appellant argued that he was entitled to a preliminary hearing under Rule 5.1 of the Tennessee Rules of Criminal Procedure because the transcript of the transfer hearing had been destroyed.

Prior to indictment, the juvenile court held a juvenile transfer hearing in order to determine whether Appellant was to be tried as an adult. According to Tennessee Code Annotated section 37-1-134(f)(2):

> In any county in which, on July 1, 1996, the general sessions court or juvenile court makes audio recordings, the court *shall* make or cause to be made an audio recording of each transfer hearing conducted pursuant to this section. Such recording shall include all proceedings in open court and such other proceedings as the judge may direct and shall be preserved as a part of the record of the hearing. The juvenile who is the subject of the hearing may, at the juvenile's own expense, transcribe the recording of the hearing and a transcript so prepared may be used for the purpose of an appeal as provided by law. In all other counties, transfer hearings shall be recorded using the procedure provided in title 40, chapter 14, part 3.

(emphasis added).

The record provided herein, including a letter from juvenile court, indicates that the hearing was recorded in accordance with the statute. However, due to a computer system crash in juvenile court, the recording of Appellant's hearing was lost. The trial court denied the motion to dismiss the indictment on the basis that probable cause was established at the transfer hearing and that Appellant was not entitled to a preliminary hearing.

On appeal, Appellant argues that the application of *Graves* mandates a dismissal of the indictment in this case due to the State's failure to comply with the recording requirement. First, Appellant likens a juvenile transfer hearing to a preliminary hearing. This is accurate at least with regard to the issue of probable cause. *See State v. Womack*, 591 S.W.2d 437, 443 (Tenn. Crim. App. 1979). In *Graves*, the case relied upon by Appellant, the preliminary hearing rather than a juvenile transfer hearing, was not recorded as required by Tennessee Rule of Criminal Procedure 5.1(a). 126 S.W.3d at 875. The trial court denied the defendant's motion to dismiss the indictment. *Id.* On appeal, this Court determined that the failure to produce a recording of the preliminary hearing was error, but that the error was harmless. *Id.* at 876. On appeal to the supreme court, the court determined that "automatic

dismissal of the indictment is not required" in cases where the recording requirements of Rule 5.1(a) are unobserved. *Id.* at 877. However, our supreme court stated:

> [T]he failure to preserve an electronic recording or its equivalent of a preliminary hearing under Rule 5.1(a) requires the dismissal of the indictment and a remand for a new preliminary hearing *unless* the State establishes (1) that all material and substantial evidence that was introduced at the preliminary hearing was made available to the defendant and (2) that the testimony made available to the defendant was subject to cross-examination.

*Id.* at 877-88 (citing *State v. Bolden*, 979 S.W.2d 587, 590 (Tenn. 1998) (footnote omitted)) (emphasis in original).

Applying the standard in *Graves* to the case herein, the testimony from the hearing on the motion to dismiss establishes that the same information presented at the juvenile transfer hearing was made available to Appellant prior to trial. Counsel for Appellant stated at the hearing on the motion that Appellant did not know if he had been prejudiced by the failure of the recording because counsel "didn't know what happened at those proceedings" but had "been advised as to who testified there." Appellant was represented at the hearing by a lawyer with the juvenile defender's office. The evidence introduced at the hearing was available to Appellant through discovery and because Appellant was represented by counsel, there was no testimony provided at the juvenile transfer hearing that was not subject to cross-examination by Appellant. Therefore, the trial court properly denied the motion to dismiss the indictment despite the State's inadvertent failure to preserve a recording of the juvenile transfer hearing. *See State v. Deangelo Sevier*, No. W2009-00172-CCA-R3-CD, 2010 WL 796948, at *6-7 (Tenn. Crim. App., at Jackson, Mar. 9, 2010), *perm. app. denied*, (Tenn. Aug. 24, 2010)[1].

## *Motion to Suppress*

Next, Appellant argues that the trial court erred in denying the motion to suppress his statement. Appellant alleges that his statement should have been suppressed because he is "mildly mentally retarded with a likely IQ in the 60s; illiterate; and . . . has difficulty understanding *Miranda* warnings and percentages." In other words, Appellant did not knowingly and intelligently waive his rights prior to making the statement in which he admitted shooting the gun. The State, on the other hand, insists that the trial court did not

---

[1]This case also involved an inadvertently lost juvenile transfer transcript due to a computer malfunction in the Shelby Juvenile Court. Presumably these glitches have been remedied.

abuse its discretion after determining that Appellant's claims regarding his statement were "incredible or lacking belief."

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id.* at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). Nevertheless, this Court reviews de novo the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. *See State v. Walton*, 41 S.W.3d 775, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999).

The Fifth Amendment to the United States Constitution provides in pertinent part that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Similarly, Article I, Section 9 of the Tennessee Constitution states that "in all criminal prosecutions, the accused shall not be compelled to give evidence against himself." Tenn. Const. art. I, § 9. However, an accused may waive this right against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436 (1966). In *Miranda*, the United States Supreme Court held that a suspect "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Id.* at 479. The Supreme Court held that a suspect may knowingly and intelligently waive the right against self-incrimination only after being apprised of these rights. *Id.* Accordingly, for a waiver of the right against self-incrimination to be constitutionally valid, the accused must make an intelligent, knowing, and voluntary waiver of the rights afforded by *Miranda*. *Id.* at 444. In considering the totality of the circumstances a court should consider:

> [T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep or medical attention; whether

the accused was physically abused; and whether the suspect was threatened with abuse.

*State v. Huddleston*, 924 S.W.2d 666, 671 (Tenn. 1996) (citing *State v. Readus*, 764 S.W.2d 770, 774 (Tenn. Crim. App. 1988)). However, no single factor is necessarily determinative. *State v. Blackstock*, 19 S.W.3d 200, 208 (Tenn. 2000) (citing *Fairchild v. Lockhart*, 744 F.Supp. 1429, 1453 (E.D. Ark. 1989)). Further, "[a] trial court's determination that a confession was given knowingly and voluntarily is binding on the appellate courts unless the defendant can show that the evidence preponderates against the trial court's ruling." *State v. Keen*, 926 S.W.2d 727, 741 (Tenn. 1994).

A court may conclude that a defendant voluntarily waived his rights if, under the totality of the circumstances, the court determines that the waiver was uncoerced and that the defendant understood the consequences of waiver. *State v. Stephenson*, 878 S.W.2d 530, 545 (Tenn. 1994). In order to be considered voluntary, the statement "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *Bram v. United States*, 168 U.S. 532, 542-43 (1897); *see also State v. Kelly*, 603 S.W.2d 726, 727 (Tenn. 1980). However, "[a] defendant's subjective perception alone is not sufficient to justify a conclusion of involuntariness in the constitutional sense." *State v. Smith*, 933 S.W.2d 450, 455 (Tenn. 1996). Instead, "'coercive police activity is a necessary predicate to finding that a confession is not voluntary . . . .'" *Id.* (quoting *State v. Brimmer*, 876 S.W.2d 75, 79 (Tenn. 1994)).

In the case herein, we determine that Appellant has failed to establish that the evidence preponderates against the trial court's determination that the statement was freely and voluntarily given. Officer Kevin Lundy testified that Appellant was accompanied by his mother to the police station. Further, Appellant executed a waiver of his rights prior to making a statement to authorities. In fact, Officer Lundy obtained written waivers on two different occasions. Officer Lundy testified that Appellant was attentive and appeared to understand his rights. Appellant's mother was present the entire time that Appellant was being questioned. At the hearing on the motion to suppress, Appellant and his mother both denied signing the waiver. The trial court found their testimony lacking in credibility, stating "[T]hey have not been truthful with the Court, and their testimon[ies] even between themselves [have] been inconsistent and [have] been untruthful." After hearing the evidence, the trial court determined that Officer Lundy was a credible witness; that he advised Appellant of his rights; that there was no evidence that Appellant was coerced, threatened, intimidated; or that the police in any other way violated Appellant's constitutional rights against self-incrimination. Further, the trial court noted that Appellant had extensive experience with the judicial system, even a prior encounter with police questioning in which he did not confess to involvement in a crime. Despite Appellant's "minimal ability to read

and write" and self-proclaimed low intelligence, the trial court determined that Appellant, who managed to attend regular classes at a twelfth-grade-level, could understand the rights explained to him.

This Court has previously upheld the denial of a motion to suppress a statement given to police by a juvenile when the evidence does not preponderate against the trial court's finding that the statement was knowingly, voluntarily, and intelligently made. *See State v. Rodney Southers*, No. E2004-01136-CCA-R3-CD, 2005 WL 780174, at *6 (Tenn. Crim. App., at Knoxville, Apr. 7, 2005), *perm. app. denied*, (Tenn. Oct. 24, 2005). In the case herein, the evidence does not preponderate against the judgment of the trial court. The trial court was the party responsible for assessing the credibility of the witnesses as well as resolution of conflicts in the evidence. *Odom*, 928 S.W.2d at 23. Appellant is not entitled to relief on this issue.

*Cross-Examination of Jamarcus Palmer*

Appellant contends that the trial court erred by refusing to allow trial counsel to cross-examine witness Jamarcus Palmer about specific instances of conduct. Appellant referred specifically to Mr. Palmer's pending charges that "involved Mr. Palmer possessing a gun . . . and firing a gun." Appellant argues on appeal that the pending charges "would be probative of the truthfulness of the defendant's prior statements." Appellant did not utilize this argument in the trial court. The State contends that the trial court properly limited cross-examination.

We observe that "[t]rial judges are empowered with great discretion regarding the trial process, including the scope of cross-examination," and that such "discretion will not be disturbed unless an abuse" thereof is found. *State v. Williams*, 929 S.W.2d 385, 389 (Tenn. Crim. App. 1996) (citing *State v. David A. Scott, III*, No. 01C01-9202-CR-00053, 1993 WL 31990, at *5 (Tenn. Crim. App., at Nashville, Feb. 11, 1993), *perm. app. denied* (Tenn. June 1, 1993)). Additionally, Tennessee Rule of Evidence 608(b) allows a party to ask a witness about specific instances of conduct that are probative of the witness's untruthfulness in order to attack the credibility of the witness. The trial court must first determine that the alleged conduct has probative value and that there is a reasonable factual basis for the inquiry. *See* Tenn. R. Evid. 608(b)(1). The trial court must also determine that "the probative value of the evidence, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Tenn. R. Evid. 608(b)(2). The trial court's ruling will only be disturbed upon a finding of an abuse of discretion. *See State v. Roberts*, 943 S.W.2d 403, 408 (Tenn. Crim. App. 1996), *overruled on other grounds by State v. Ralph*, 6 S.W.3d 251, 257 (Tenn.1999).

In the case herein, counsel for Appellant failed to specify the exact charges Mr. Palmer faced. Additionally, Appellant did not argue at trial that the pending charges had any effect on the witness's credibility. Counsel for Appellant sought impeachment of the witness with the pending charges in the event that the witness claimed he was unfamiliar with guns or that he never possessed a firearm. However, during trial, Mr. Palmer testified that he had some knowledge of guns and could recognize the difference between a revolver and a semi-automatic. Further, during cross-examination, Mr. Palmer was not even questioned about his knowledge of or experience with guns. Additionally, Appellant's counsel did not make an offer of proof to show how Mr. Palmer would have testified on cross-examination had he been asked about the pending charges. Thus, it is unclear what value the introduction of the pending charges would have had on the witness's testimony. The trial court did not abuse its discretion. Appellant is not entitled to relief on this issue.

*Sufficiency of the Evidence*

Appellant argues on appeal that the evidence is insufficient to sustain the convictions. Specifically, Appellant argues that "the State failed to prove beyond a reasonable doubt that the appellant did not act in self-defense." Appellant argues that a review of the evidence shows that "Big Rodney instigated the hostilities by aggressively approaching [Appellant] at the Jamboree and threatening him." The State, on the other hand, alleges that the evidence does not demonstrate self-defense and is sufficient to support the convictions.

In order to convict Appellant of second degree murder, the State was required to prove that Appellant unlawfully and knowingly killed another. T.C.A. §§ 39-13-201, -210(a). A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result. T.C.A. § 39-11-302(b).

Voluntary manslaughter is the "intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." T.C.A. § 39-13-211(a).

A person commits a criminal attempt when, "acting with the kind of culpability otherwise required for the offense," he acts in one of the following ways:

(1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believed them to be;

(2) Acts with intent to cause a result that is an element of the offense if the circumstances surrounding the conduct were as the person believed them to be; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

T.C.A. § 39-12-101(a). In order to commit attempted voluntary manslaughter, therefore, a defendant must either: (1) intentionally engage in conduct that would cause the victim's death if the circumstances surrounding the conduct were as the person believed them to be; (2) act with intent to cause the victim's death if the circumstances surrounding the conduct were as the person believed them to be; or (3) act with intent to cause the victim's death, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense. T.C.A. § 39-13-211(a); T.C.A. § 39-12-101(a). A person acts intentionally when he has the "conscious objective or desire to engage in the conduct or cause the result." T.C.A. § 39-11-302(a).

Finally, under Tennessee's reckless endangerment statute, "[a] person commits an offense who recklessly engages in conduct which places or may place another person in imminent danger of death or serious bodily injury." T.C.A. § 39-13-103(a). A person acts recklessly "when the person is aware of but consciously disregards a substantial and unjustifiable risk." T.C.A. § 39-11-302(c). That "risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint." *Id.*

The jury was presented with the theory of self-defense. Tennessee defines self-defense as follows:

A person is justified in threatening or using force against another person when, and to the degree, the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds. There is no duty to retreat before a person threatens or uses force.

T.C.A. § 39-11-611(a). Self-defense requires a reasonable belief that "force is immediately necessary to protect against the other's use or attempted use of unlawful force" and that there is an "imminent danger of death or serious bodily injury" to the defendant. T.C.A. §

-11-

39-11-611(a). When a defendant relies upon a theory of self-defense, the State bears the burden of proving that the defendant did not act in self-defense. *State v. Sims*, 45 S.W.3d 1, 10 (Tenn. 2001). Further, it is well-settled that whether an individual acted in self-defense is a factual determination to be made by the jury as the sole trier of fact. *See State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); *State v. Ivy*, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). "Encompassed within that determination is whether the defendant's belief in imminent danger was reasonable, whether the force used was reasonable, and whether the defendant was without fault." *State v. Thomas Eugene Lester*, No. 03C01-9702-CR-00069, 1998 WL 334394, at *2 (Tenn. Crim. App., at Knoxville, June 25, 1998), *perm. app. denied*, (Tenn. Feb. 1, 1999) (citing *State v. Renner*, 912 S.W.2d 701, 704 (Tenn. 1995)). It is within the prerogative of the jury to reject a claim of self-defense. *See Goode*, 956 S.W.2d at 527. Upon our review of a jury's rejection of a claim of self-defense, "in order to prevail, the [Appellant] must show that the evidence relative to justification, such as self-defense, raises, as a matter of law, a reasonable doubt as to his conduct being criminal." *State v. Clifton*, 880 S.W.2d 737, 743 (Tenn. Crim. App. 1994).

In this case, the jury clearly rejected Appellant's claim of self-defense by finding him guilty of second degree murder, attempted voluntary manslaughter, and reckless endangerment. Therefore, as stated above, Appellant must show this Court that the evidence raises a reasonable doubt as to his conduct being criminal. Appellant has not met this burden. The proof at trial, when taken in a light most favorable to the State, indicated that the victims were unarmed at the time they were shot at multiple times by Appellant. During trial, Appellant testified that he thought Mr. Thomas was armed by the way that he was holding his arm; Appellant admitted that he never actually saw Mr. Thomas with a gun before he snatched the weapon from Mr. Crumb and fired it at least four times at Mr. Thomas, Mr. Wilson, and Mr. Palmer. In addition, the proof showed that Appellant fired the first shots even after Mr. Thomas identified himself to Appellant. Further, Appellant fired the shots at the people and the car with little disregard for the large number of people around him both outside and inside the surrounding apartments. Therefore, there is no evidence other than Appellant's own testimony to prove that he acted in self-defense and that his behavior did not constitute second degree murder, attempted voluntary manslaughter, and reckless endangerment. The jury obviously rejected Appellant's account of events. We have stated above that the jury is the arbiter of the credibility of witnesses at trial. Clearly, the jury found that Appellant was not credible. We conclude that the evidence was sufficient to support Appellant's convictions and reject the theory of self-defense. Therefore, this issue is without merit.

*Sentencing*

Lastly, Appellant argues that the trial court imposed an excessive sentence. Specifically, Appellant contends that he should have received the minimum sentence in the range for second degree murder and that the trial court should not have ordered the sentences to be served consecutively. Appellant contends that two of the enhancement factors applied are not supported by the evidence and that one of the factors is "inherent within the offense of murder second degree." The State disagrees, noting that the trial court followed the sentencing principles and considered all relevant facts and circumstances.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). "[T]he presumption of correctness 'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). "If . . . the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." *Id.* at 345 (citing *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)). We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *Ashby*, 823 S.W.2d at 169.

In making its sentencing determination, a trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995). When imposing the sentence within the appropriate sentencing range for the defendant:

[T]he court shall consider, but is not bound by, the following advisory sentencing guidelines:

-13-

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c) (2006).

At the outset we note that Appellant committed the criminal offenses at issue in March of 2006, therefore, the 2005 amendments to the sentencing act apply to our review of his sentencing. The 2005 amendments to the sentencing act made the application of the enhancement factors advisory in nature. *See* T.C.A. § 40-35-114; *State v. Jackie Lynn Gray*, No. M2007-02360-CCA-R3-CD, 2008 WL 2579175, at *5 (Tenn. Crim. App., at Nashville, June 28, 2008), *perm. app. denied*, (Tenn. Dec. 29, 2008); *State v. Troy Sollis*, No. W2007-00688-CCA-R3-CD, 2008 WL 1931688, at *3 (Tenn. Crim. App., at Jackson, May, 2, 2008). In fact, "[t]he 2005 amendments [to the sentencing act] deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." *State v. Carter*, 254 S.W.3d 335, 344 (Tenn. 2008). After a review of the transcript from the sentencing hearing, it is clear that the trial court considered the nature and characteristics of the criminal conduct involved, Appellant's history and background, the mitigating and enhancement factors, and the principles of sentencing. *See id.* at 345-46.

The trial court applied enhancement factor (2), "[t]he defendant was a leader in the commission of an offense involving two (2) or more criminal actors." T.C.A. § 40-35-114(2). Appellant argues this enhancement factor is not supported by the record. To the contrary, during his own statement, Appellant admitted that he snatched the gun from the hands of Mr. Crumb and fired it at the victims. Further, the trial court noted Appellant did not have to be "the" leader, merely "a" leader in the commission of the offense and that Appellant and his cohorts "were all involved in a chase, a pursuit, looking for someone that they thought had fired shots . . . earlier."

The trial court also applied enhancement factor (9), that Appellant "possessed or employed a firearm, explosive devise, or other deadly weapon during the commission of the offense." T.C.A. § 40-35-114 (9). Appellant does not challenge the application of this enhancement factor.

The trial court also applied enhancement factor (16), "[t]he defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if

committed by an adult." T.C.A. § 40-35-114(16). The record establishes that Appellant has a lengthy juvenile record, and that at least one of those adjudications, robbery, would have been a felony had it been committed by an adult.

Finally, the trial court applied enhancement factor (10), "[t]he defendant had no hesitation about committing a crime when the risk to human life was high." T.C.A. § 40-35-114 (10). Appellant argues that this enhancement factor is "inherent" within the offense of second degree murder but provides no citation to authority to support this assertion. Despite the failure of Appellant to support this argument with authority, it has no merit. This enhancement factor may be applied in a second degree murder case "where the defendant creates a high risk to the life of a person other than the victim." *State v. Bingham*, 910 S.W.2d 448, 452 (Tenn. Crim. App. 1995), *overruled in part on other grounds by State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000). The record herein indicated that Appellant fired a weapon in a crowded area outside a high school where there were numerous other people in the parking lot of an apartment complex.

After a review of the evidence, we determine that the record supports the existence of each applied enhancement factor and reflects that the trial court considered all the proper criteria in sentencing, as well as stating the reasons for the sentence on the record. The trial court's imposition of a twenty-five year sentence is affirmed. Appellant is not entitled to relief on this issue.

Appellant also argues that the trial court improperly ordered consecutive sentencing. Appellant's argument with regard to this issue consists merely of the following statement without any argument or citation to authority: "[f]urthermore, the trial judge erred by ordering the defendant's sentences to be served consecutively." Tennessee Rule of Appellate Procedure 27(a)(7) provides that a brief shall contain "[an] argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Tennessee Court of Criminal Appeals Rule 10(b) states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." *See also State v. Sanders*, 842 S.W.2d 257 (Tenn. Crim. App. 1992) (determining that issue was waived where defendant cited no authority to support his complaint). Appellant fails to cite any authority to support his argument. Therefore this issue is waived.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JERRY L. SMITH, JUDGE